United States District Court
Southern District of Texas
**ENTERED**
October 23, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERTO J. SALINAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00160 |
| | § | |
| KIMBERLY PEREZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO RETAIN CASE AND DISMISS CERTAIN CLAIMS**

Plaintiff Roberto J. Salinas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2).

For purposes of screening and the reasons set forth below, the undersigned respectfully recommends that the Court:

- **DISMISS without prejudice** Plaintiff's claims against Lt. Jailer Kimberly Perez ("Lt. Perez"), Duval County Sheriff Romeo R. Ramirez ("Sheriff Ramirez"), Duval County Clerk Araseli B. Lichtenberger ("Clerk Lichtenberger"), and Duval County Attorney Baldemar Gutierrez ("County Attorney Gutierrez") in their official capacities;

- **RETAIN** Plaintiff's Fourth Amendment false imprisonment claim against Lt. Perez in her individual capacity with regard to the time Plaintiff spent in the Duval County Jail after he was allegedly granted bail on August 17, 2021;

- **RETAIN** Plaintiff's Fourth Amendment false imprisonment claim against Sheriff Ramirez in his individual capacity with regard to the time Plaintiff spent in the Duval County Jail after he was allegedly granted bail on November 15, 2021;

- **RETAIN** supplemental  jurisdiction over Plaintiff's state law claim of criminal trespass and **DISMISS with prejudice** this state law claim against Sheriff Ramirez in his individual capacity as frivolous and/or for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and

- **DISMISS with prejudice** Plaintiff's remaining § 1983 claims as frivolous or for failure to state a claim for relief, pursuant to § 1915(e)(2)(B), against: (1) the Duval County Jail; (2) Lt. Perez in her individual capacity; (3) Sheriff Ramirez in his individual capacity; (4) Clerk Lichtenberger in her individual capacity; and (5) County Attorney Gutierrez in his individual capacity.

The undersigned will order service separately on Lt. Perez and Sheriff Ramirez with respect to the Fourth Amendment false imprisonment claims retained in this case.

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

On June 23, 2023, the Court received Plaintiff's first civil rights action.  (D.E. 1). Plaintiff, a non-prisoner previously confined in the Duval County Jail, sues the following defendants: (1) Lt. Perez; (2) Sheriff Ramirez; and (3) the Duval County Jail. (D.E. 1, pp. 1, 3).  Plaintiff's allegations in the original complaint arise in connection with his arrest

and confinement in the Duval County Jail in August 2021. Plaintiff alleges the following

facts:

- On August 16, 2021, Plaintiff was arrested on two charges of making terroristic threats.

- On August 17, 2021, Plaintiff appeared before the county judge to discuss the setting of bail.

- An official, Ricardo Garcia, notified Plaintiff's wife that it would take a $30,000 money order to have Plaintiff released on bail.

- Soon after getting his release paperwork from Hoss Luna, Lt. Perez spoke through the phone speaker near Luna that Plaintiff could not be released until the next day due to the nature of his alleged crimes.

(*Id.* at 4-5).  In addition to seeking monetary relief, Plaintiff asks that criminal charges be

brought against Lt. Perez. (*Id.* at 4).  At the Court's direction, Plaintiff has filed a More

Definite Statement.  (D.E. 5).

On July 17, 2023, the Court received Plaintiff's second civil rights action. (Case No.

2:23-CV-00182, D.E. 1).  Therein, Plaintiff sued the following defendants: (1) Sheriff

Ramirez; (2) Clerk Lichtenberger; and (3) County Attorney Gutierrez.  (*Id.*).  Because

Plaintiff's first and second civil rights actions involved similar facts and each named

Sheriff Ramirez, the undersigned ordered the Clerk of Court to: (1) consolidate Plaintiff's

actions into one action; (2) administratively close Case No. 2:23-CV-182; and (3) docket

Plaintiff's § 1983 complaint filed in Case No. 2:23-CV-182 as a Supplement to his

complaint in Case No. 2:23-CV-160.  (D.E. 6; Case No. 2:23-CV-00182, D.E. 5).

Accordingly, when adding the Supplement to his Original Complaint, Plaintiff sues the following defendants in this action: (1) Lt. Perez; (2) Sheriff Ramirez; (3) Duval County Jail; (4) Clerk Lichtenberger; and (5) County Attorney Gutierrez.  (D.E. 1; pp. 1, 3; D.E. 7, pp. 1-3).  On October 4, 2023, the undersigned conducted a *Spears*[1] hearing where Plaintiff was given a further opportunity to explain his claims.  (D.E. 13). Plaintiff alleges the following pertinent facts in his Original Complaint (D.E. 1), More Definite Statement (D.E. 5), Supplement (D.E. 7), and *Spears* hearing testimony (D.E. 13).

On August 16, 2021, Plaintiff was arrested on two charges of making terroristic threats in Duval County.  (D.E. 1, p. 4; D.E. 5, p. 1). These charges arose in connection with threats Plaintiff allegedly made in a 911 call.  (D.E. 13, pp. 5-6).  Plaintiff was confined that afternoon in one of the Duval County Jail's holding cells.  (D.E. 5, p. 1; D.E. 13, p. 6).  Plaintiff ultimately plead guilty to both terroristic threat charges and was sentenced to time served in jail.  (D.E. 13, pp. 7-8).

Plaintiff states that, on August 17, 2021, he appeared before Duval County Judge Canales to discuss the setting of bail.  (D.E. 13, pp. 8, 10).  Bail amount was set for $1,500 per charge.  (D.E. 5, p. 2; D.E. 13, p. 10).  A Duval County official, Ricardo Garcia, notified Plaintiff's wife that it would take a $30.00 money order to have Plaintiff released on bail.  (D.E. 1, p. 4; D.E. 13, p. 10).  Jailer Hoss Luna also told Plaintiff he would be released on August 17, 2021, and began to work on Plaintiff's release paperwork.  (D.E. 5, p. 3).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Soon after getting his release paperwork from Luna, Lt. Perez spoke through the phone speaker near Luna that Plaintiff could not be released until he spent more time in jail due to the nature of his alleged crimes.  (D.E. 1, p. 5; D.E. 5, p. 3; D.E. 13, pp. 10-11).  Plaintiff received no other explanation as to why Lt. Perez detained Plaintiff after August 17, 2021.  (D.E. 13, p. 14).  Plaintiff remained in the Duval County Jail until the next day, August 18, 2021, when Plaintiff's wife "paid the bill" for Plaintiff to be released.  (D.E. 13, pp. 11, 15).  Plaintiff suffered mental anguish and emotional stress as a result of having to stay in jail.  (D.E. 5, p. 3).  In addition, Plaintiff lost his job as a result of being detained past August 17, 2021.  (D.E. 13, pp. 16-17).

Prior to November 14, 2021, dogs owned by Manual Molina came onto Plaintiff's property.  (D.E. 13, p. 21).  Plaintiff took pictures of the dogs and posted them on Facebook without mentioning Molina's name.  (*Id.* at 21-22).  On November 14, 2021, Manuel Molina entered Plaintiff's property with a knife in hand allegedly to kill Plaintiff.  (D.E. 5, p. 4; D.E. 7, p. 4; D.E. 13, p. 18).  Plaintiff responded by grabbing a kitchen knife that he and his son were using to cut pieces of rope for purposes of tying a blue tarp around the goat coral.  (D.E. 7, p. 4).  Plaintiff then moved "toward the coral to avoid any problem." (*Id.*).  Molina, in turn, pulled his truck forward, parked, and pulled out a gun.  (*Id.*; D.E. 13, p. 18).  Plaintiff ran into his ranch house and called 911.  (D.E. 7, p. 5; D.E. 13, p. 18).

An officer arrived a few minutes later with his body camera recording the scene.  (D.E. 7, p. 5; D.E. 13, p. 22).  The officer took into his possession Plaintiff's kitchen knife.  (D.E. 7, p. 5).  The officer was told by his supervisor to arrest Plaintiff on his property.

(*Id.*).  Once Plaintiff was placed in handcuffs, Plaintiff communicated to his wife that he felt suicidal.  (*Id.*).  Plaintiff was charged with making a terroristic threat  and taken to the Duval County Jail.  (D.E. 13, p. 23).

After arriving at the Duval County Jail on November 14, 2021, Plaintiff was strapped in a chair until the morning of November 15, 2021.  (D.E. 7, p. 5; D.E. 13, p. 19). Plaintiff suffered back pain during this time.  (D.E. 7, p. 5).  On the morning of November 15, 2021, Plaintiff was released from the straps and placed in solitary confinement.  (*Id.*; D.E. 13, p. 19).

On November 15, 2021, Plaintiff was brought before Judge Canales, who could not understand why Plaintiff was in jail instead of Molina.  (D.E. 5, p. 4; D.E. 7, p. 5; D.E. 13, p. 19).  Judge Canales set Plaintiff's bail at $250.00, which required only a $10.00 money order.  (*Id.*).  A parole officer attempted to post bail for Plaintiff, but Plaintiff was denied release that day because Sheriff Ramirez wanted to talk to Plaintiff on November 16, 2021 at 5:00 p.m.  (D.E. 13, pp. 19-20).

On November 16, 2021, Plaintiff was escorted into Sheriff Ramirez's office.  (D.E. 7, p. 5; D.E. 13, p. 20).  When Plaintiff arrived, Clerk Lichtenberger had just left Sheriff Ramirez's office.  (D.E. 7, p. 5).  Plaintiff testified that, prior to being a county clerk, Clerk Lichtenberger served as the Jail Administrator at the Duval County Jail as well as a doctor and 911 coordinator.  (D.E. 13, p. 25).  Plaintiff did not know why Clerk Lichtenberger was in the sheriff's office that day.  (*Id.* at 26).

6 / 25

During the 5:00 p.m. meeting on November 16, 2021, Sheriff Ramirez yelled at Plaintiff and instructed him to cease messing with Molina.  (D.E. 7, p. 5; D.E. 13, pp. 20, 27-28).  Sheriff Ramirez refused to listen to Plaintiff's explanation and motioned Plaintiff to zip his mouth so that he could be released.  (D.E. 7, p. 5).  Plaintiff was released from custody following his meeting with Sheriff Ramirez.  (D.E. 13, pp. 29-30).

At some point in 2023, Plaintiff sought to discuss with County Attorney Gutierrez his criminal case involving the November 2021 terroristic threat charge.  (D.E. 13, pp. 30, 32).  County Attorney Gutierrez was not available to talk to Plaintiff, and the county attorney's secretaries did not know the criminal case to which Plaintiff was referring.  (*Id.* at 30-31).  Plaintiff learned that the case had disappeared after talking with a Duval County judge and the secretary of the county district attorney.  (*Id.*).

On March 31, 2022, Sheriff Ramirez entered Plaintiff's property through the back gate.  (D.E. 7, p. 5).  Dolly Molina, Manuel Molina's wife, had called Sheriff Ramirez complaining about Plaintiff and his son pointing a bat at the Molina's truck when it passed by the property.  (D.E. 5, p. 4; D.E. 7, p. 5).  According to Plaintiff, he and his son were playing baseball that day.  (D.E. 5, pp. 4-5; D.E. 7, p. 5).  While playing baseball, Plaintiff's son noticed the Molina's truck drive by, causing him to retreat further into Plaintiff's property.  (D.E. 7, p. 5).  About 30 to 45 minutes later, the truck drove by again.  (*Id.*).

Five to ten minutes later, Sheriff Ramirez entered Plaintiff's property through the back gate without justification.  (*Id.*; D.E. 13, pp. 34, 36).  Sheriff Ramirez informed Plaintiff that Dolly Molina had complained to Sheriff Ramirez.  (*Id.*; D.E. 13, p. 37).

Sheriff Ramirez refused to leave Plaintiff's property despite being asked several times by Plaintiff to leave.  (D.E. 5, p. 5; D.E. 13, p. 38).  Sheriff Ramirez then informed Plaintiff that he did not hold Plaintiff back from posting bail in connection with his November 14, 2021 arrest because of the Molinas.  (D.E. 5, p. 5).  Rather, Sheriff Ramirez held Plaintiff jail because Plaintiff was harassing and threatening Sheriff Ramirez's officers.  (*Id.*; D.E. 13, p. 39).  Sheriff Ramirez eventually left Plaintiff's property and did not charge Plaintiff with any crime in connection with his visit on March 31, 2022.  (D.E. 13, p. 40).

Plaintiff claims that Sheriff Ramirez violated his rights by falsely imprisoning him following his November 14, 2021 false arrest.  (D.E. 5, pp. 4-6; D.E. 13, p. 43). Plaintiff further claims that Sheriff Ramirez entered his property on March 31, 2022 without justification and harassed both Plaintiff and his son.  (D.E. 5, pp. 4-5; D.E. 13).  Plaintiff seeks to hold Sheriff responsible for obstruction of justice, tampering with evidence, bullying, and harassment.  (D.E. 5, pp. 4-6; D.E. 13, p. 43).  Plaintiff sues Sheriff Ramirez in his official capacity.  (D.E. 5, p. 7; D.E 13, p. 44).

Plaintiff claims that Lt. Perez violated his constitutional rights by falsely imprisoning him on August 17, 2021 after his bail amount was set.  (D.E. 5, p. 6; D.E. 13, pp. 41-42).  Plaintiff also appears to claim that Lt. Perez committed "official oppression" by deleting his charge following the November 14, 2021 arrest from the server.  (D.E. 13, pp. 42-43).   Plaintiff sues Lt. Perez in her official capacity.  (*Id.*).

Plaintiff claims that Clerk Lichtenberger falsified certain arrest records and paperwork in connection with his November 14, 2021 arrest.  (D.E. 7, p. 3; D.E. 13, pp.

44-45).  Plaintiff further claims that Clerk Lichtenberger obstructed justice and tampered with evidence.  (D.E. 13, p. 44).  Plaintiff sues Clerk Lichtenberger in both her individual and official capacities.  (*Id.* at 47).

Plaintiff claims that  County Attorney Gutierrez violated his constitutional rights by failing to investigate the missing case associated with the November 14, 2021 arrest.  (*Id.* at 48-49).  Plaintiff sues County Attorney Gutierrez in his official capacity only.  (*Id.* at 50).

In his More Definite Statement, Plaintiff asserts that, in addition to monetary relief, he seeks criminal charges be brought against Sheriff Ramirez and Lt. Perez.  (D.E. 5, p. 7).  Plaintiff clarified at the *Spears* hearing, however, that he seeks monetary relief only.  (D.E. 13, pp. 50-52).

## III.   GOVERNING LAW

### A.  Legal Standard for Screening of Plaintiff's Action

When a *pro se* plaintiff seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

### B. Relevant law regarding 42 U.S.C. § 1983

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail

on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).  "Personal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).

## IV.   DISCUSSION

### A.  Plaintiff's Claims against the Duval County Jail

Plaintiff names the Duval County Jail as one of the defendants in this case.  (D.E. 1, pp. 1, 3).  Plaintiff, however, cannot sue a Texas county jail because it is a nonjural entity and, therefore, lacks the capacity to be sued under § 1983. *See Crawford v. Collin Cnty. Det. Facility*, No. 4:20-CV-668-RAS-CAN, 2022 WL 4459855, at **2-3 (E.D. Tex. Aug. 18, 2022), *recommendation adopted*, 2022 WL 4449315 (E.D. Tex. Sept. 22, 2022) (recognizing that a county detention facility does not have jural existence and cannot be a proper party to a lawsuit).  Accordingly, the undersigned recommends that Plaintiff's claims against the Duval County Jail be dismissed with prejudice as frivolous or for failure to state for relief.

### B.  Official Capacity Claims

In addition to his individual-capacity claims, which will be discussed later, Plaintiff indicates that he sues Sheriff Ramirez, Lt. Perez, Clerk Lichtenberger, and County

Attorney Gutierrez in their official capacities.  Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted).  Thus, Plaintiff's suit against any defendant in his or her official capacity is effectively a suit against the official's office, Duval County.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Under § 1983, a municipality or local government entity may be held liable for acts for which it is actually responsible. *See Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). The governmental body must either itself subject a person to a deprivation of rights or cause a person to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 59 (2011). A municipality is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy or custom. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation). An official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60.

Liability of a municipality under § 1983 therefore requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). And "isolated unconstitutional actions by municipal employees will almost never trigger liability," because "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578.

For several distinct reasons, Plaintiff's claims – accepted as true and liberally construed – fail to plausibly allege the elements required for municipal liability under § 1983. First, Plaintiff does not allege that any of the named defendants are policymakers in Duval County. Second, and more importantly, while Plaintiff generally discusses how officials have treated him, he does not allege the existence of official policies with regard to imprisoning him or entering his property. Plaintiff certainly does not allege such policies in any depth of detail to suggest that it is the "moving force" behind the alleged violations of Plaintiff's constitutional rights. *Cf. Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (holding that a plaintiff must provide specific facts regarding the description of a policy and its relationship to the underlying constitutional violation).

Additionally, Plaintiff's allegations reference only his own situation. He does not provide in sufficient detail allegations of other incidents in which the constitutional rights of other individuals have allegedly been violated. This is insufficient to allege a plausible claim for municipal liability under § 1983. *See Peterson v. City of Fort Worth*, 588 F.3d

13 / 25

838, 850-51 (5th Cir. 2009) (explaining that, to show custom that fairly represents municipal policy, the plaintiff must show "sufficiently numerous prior incidents" as opposed to "isolated instances") (citation omitted); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."). Because Plaintiff has not plausibly alleged the existence of a policy or custom, or that any such policy was the "moving force" behind the alleged violation of his constitutional rights, the undersigned recommends that Plaintiff's claims against Sheriff Ramirez, Lt. Perez, Clerk Lichtenberger, and County Attorney Gutierrez in their official capacities be dismissed without prejudice.

### C. Events from August 16 through August 18, 2021

Plaintiff's allegations reflect that he was subjected to false imprisonment beginning on August 17, 2021.  Plaintiff specifically alleges that:

- On August 16, 2021, he was arrested on two charges of making terroristic threats in Duval County (D.E. 1, p. 4; D.E. 5, p. 1);

- On August 17, 2021, he appeared before a Duval County judge to discuss the setting of bail (D.E. 1, p. 4; D.E. 5, p. 2; D.E. 13, pp. 8, 10);

- A bail amount was set for $1,500 per charge (D.E. 5, p. 2; D.E. 13, p. 10);

- A Duval County official notified Plaintiff's wife that it would take a $30.00 money order to have Plaintiff released on bail (D.E. 1, p. 4; D.E. 13, p. 10);

- Jailer Luna also told Plaintiff he would be released on August 17, 2021, and began to work on Plaintiff's release paperwork (D.E. 5, p. 3); and

- Soon after getting his release paperwork from Luna, Lt. Perez denied Plaintiff's release on bond and kept Plaintiff in jail for an additional day due to the nature of his alleged crimes (D.E. 1, p. 5; D.E. 5, p. 3; D.E. 13, pp. 10-11).

While Plaintiff indicates that he only sues Lt. Perez in her official capacity, the undersigned will construe Plaintiff's allegations as suing her also in her individual capacity. A Fourth Amendment false imprisonment claim consists of detention without legal process. *Thomas v. City of Kingsville*, No. 2:18-CV-136, 2018 WL 8263887, at *6 (S.D. Tex. Aug. 15, 2018) (Ellington, M.J.), *recommendation adopted* 2019 WL 2085714 (S.D. Tex. May 13, 2019) (Tagle, J.) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). Plaintiff's allegations, accepted as true for purposes of screening, plausibly state a Fourth Amendment false imprisonment claim against Lt. Perez with regard to time Plaintiff spent in the Duval County Jail after he was allegedly granted bail. *See Evans v. Peltin*, No. 3:20-cv-2100-L (BT), 2021 WL 2785341, at *3 (N.D. Tex. Jun. 4, 2021), *recommendation adopted*, 2021 WL 2783988 (Jul. 2, 2021); *Battle v. Cantera Psychiatry*, No. SA-19-CV-01288-DAE, 2020 WL 614588, at *2 (W.D. Tex. Feb. 10, 2020); *Thomas v. Torres*, 2018 WL 1866052, at *4 (S.D. Tex. Mar. 14, 2018) (Libby, M.J.), *recommendation adopted* 2018 WL 1858547 (S.D. Tex. Apr. 18, 2018) (Tagle, J.). Accordingly, the undersigned respectfully recommends that this claim be retained against Lt. Perez in her individual capacity.

**D. Plaintiff's November 14, 2021 Arrest and Subsequent Detention**

Liberally construed, Plaintiff claims that he was subjected to a false imprisonment following his arrest on November 14, 2021 and grant of bail the next day.  (D.E. 5, p. 4; D.E. 7, pp. 4-6).  Plaintiff alleges that:

- on November 14, 2021 Molina entered Plaintiff's property carrying a knife with the intent to kill Plaintiff (D.E. 5, p. 4; D.E. 7, p. 4; D.E. 13, p. 18);

- Plaintiff grabbed a kitchen knife to protect himself (D.E. 7, p. 4);

- Molina responded by pulling out a gun (D.E. 7, p. 4; D.E. 13, p. 18);

- after Plaintiff called 911, a Duval County officer arrived at the property and arrested Plaintiff upon instructions from his supervisor (D.E. 7, p. 5; D.E. 13, p. 22);

- Plaintiff was charged with making a terroristic threat and taken to the Duval County Jail (D.E. 13, p. 22)

- Plaintiff was confined at the Duval County Jail from November 14 through 16, 2021 at the Duval County Jail (D.E. 7, p. 5; D.E. 13, pp. 19-20, 29-30);

- on November 15, 2021, Judge Canales expressed her confusion as to why Plaintiff was arrested instead of Molina and set bail at $250.00 (D.E. 5, p. 4; D.E. 7, p. 5; D.E. 13, p. 19);

- A parole officer attempted to post bail for Plaintiff, but Plaintiff was denied release that day because Sheriff Ramirez wanted to talk to Plaintiff the next day on November 16, 2021 at 5:00 p.m. (D.E. 13, pp. 19-20);

- on November 16, 2021, Plaintiff was escorted into Sheriff Ramirez's office just as Clerk Lichtenberger was leaving the office  (D.E. 7, p. 5; D.E. 13, p. 20);

- Sheriff Ramirez yelled at Plaintiff and instructed him to cease messing with Molina (D.E. 7, p. 5; D.E. 13, pp. 20, 27-28 );

- Sheriff Ramirez refused to listen to Plaintiff's explanation and motioned Plaintiff to zip his mouth so that he could be released (D.E. 7, p. 5);

- Plaintiff was released from custody following his meeting with Sheriff Ramirez (D.E. 13, pp. 29-30);

- sometime in 2023, Plaintiff sought to discuss with County Attorney Gutierrez his criminal case involving the November 2021 terroristic threat charge (D.E. 13, pp. 30, 32);

- County Attorney Gutierrez was not available to talk (D.E. 13, pp. 30-31); and

- Plaintiff learned that the case had disappeared after talking with a county judge and the secretary of the county district attorney (D.E. 13, pp. 30-31).

### *(1) Sheriff Ramirez*

Plaintiff's allegations, accepted as true for purposes of screening, indicate that Sheriff Ramirez was responsible for keeping Plaintiff in custody after bail was set on November 15, 2021 despite Plaintiff's ability to pay the set bail amount. While Plaintiff presents nothing to suggest Sheriff Ramirez had any responsibility for his arrest on November 14, 2021, his allegations are sufficient to plausibly state a Fourth Amendment false imprisonment claim against Sheriff Ramirez with regard to the time Plaintiff spent in the Duval County Jail after he was allegedly granted bail on November 15, 2021. *See Evans*, 2021 WL 2785341, at *3; *Battle*, 2020 WL 614588, at *2; *Thomas*, 2018 WL 1866052, at *4. Accordingly, the undersigned respectfully recommends that this claim be retained against Sheriff Ramirez in his individual capacity.

### (2) Clerk Lichtenberger

Plaintiff claims that Clerk Lichtenberger falsified certain arrest records and paperwork in connection with his November 14, 2021 arrest. (D.E. 7, p. 3; D.E. 13, pp. 44-45). Plaintiff further claims Clerk Lichtenberger obstructed justice and tampered with evidence. (D.E. 13, p. 44).

Plaintiff's allegations, accepted as true, reflect that Clerk Lichtenberger played no role in his arrest on November 14, 2021 or that she had any involvement in his confinement in jail from November 14 through November16, 2021. *Thompson,* 709 F.2d 381, 382 ("Personal involvement is an essential element of a civil rights cause of action.").   Plaintiff further offers only conclusory and threadbare allegations regarding Clerk Lichtenberger's role in falsifying certain records as to his criminal charge or tampering with evidence on that charge. *Iqbal*, 556 U.S. at 678. He otherwise fails to state any specific facts showing how Clerk Lichtenberger violated his constitutional rights. *See Parker v. Moreno*, No. 3:01CV1283-D, 2002 WL 1758181, at *3 (N.D. Tex. July 26, 2002) (dismissing plaintiff's claims of harassment, racial profiling, obstruction of justice, and verbal abuse because he alleged no facts showing a deprivation of a constitutional right).   Accordingly, the undersigned recommends that Plaintiff's claims against Clerk Lichtenberger in her individual capacity – in connection with the November 2021 criminal charge, arrest, and detention – be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### (3) County Attorney Gutierrez

Plaintiff claims that County Attorney Gutierrez violated his constitutional rights by failing to investigate the missing criminal case associated with the November 14, 2021 arrest. (*Id.* at 48-49). At the outset, the undersigned will consider whether Plaintiff's claims against County Attorney Gutierrez are barred by the doctrine of prosecutorial immunity.

"Prosecutors have absolute immunity from suit for actions performed within the scope of their prosecutorial duties." *Walker v. Mississippi*, No. 21-60442, 2021 WL 4618467, at *1 (5th Cir. Oct. 6, 2021) (citing *Imbler v. Pachtman*, 424 U.S. 409, 420-24, 431 (1976)). "Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process." *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994).

"Thus, a prosecutor is immune from civil rights liability for actions taken in connection with a judicial proceeding, even if taken maliciously." **Gressett v. Moore**, No. A-20-CV-230-RP, 2020 WL 1171954, at *2 (W.D. Tex. Mar. 11, 2020) (citing *Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991) and *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987)). Nevertheless, not all prosecutorial functions are protected. *Id.* "Absolute immunity does not apply to investigative or administrative acts performed by prosecutors." *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 493 (1991).

Rather than complain about County Attorney Gutierrez's role in causing the criminal charge against Plaintiff on November 14, 2021 to mysteriously disappear, Plaintiff's testimony at the *Spears* hearing reference County Attorney Gutierrez's failure

to investigate why his criminal case had disappeared.  Plaintiff's allegations, accepted as true, indicate that  County Attorney Gutierrez is not entitled to prosecutorial immunity.  However, Plaintiff does not identify any specific investigative acts undertaken by County Attorney Gutierrez with regard to the missing criminal case.  Plaintiff simply challenges his failure to conduct any investigation.  Plaintiff provides only threadbare or conclusory facts in his pleadings and *Spears* hearing testimony regarding whether or how the absence of any investigation violated his constitutional rights.  *Iqbal*, 556 U.S. at 678.  Accordingly, the undersigned recommends that Plaintiff's claims against County Attorney Gutierrez in his individual capacity be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### (4) Lt. Perez

Plaintiff cryptically claims that Lt. Perez committed "official oppression" by deleting his charge following the November 14, 2021 arrest from the server.  (D.E. 13, pp. 42-43).  Other than providing threadbare and conclusory facts, Plaintiff fails to provide any specific facts detailing how Lt. Perez deleted this criminal charge or how this action purportedly violated Plaintiff's constitutional rights.  *See Iqbal*, 556 U.S. at 678; *Parker*, 2002 WL 1758181, at *3.  Accordingly, the undersigned respectfully recommends that Plaintiff's claim against Lt. Perez in her individual capacity, related to her alleged act of "official oppression," be dismissed as frivolous and/or for failure to state a claim for relief.

### E.  Events on March 31, 2022

Plaintiff claims that, on March 31, 2022 Sheriff Ramirez entered his property without justification and harassed both Plaintiff and his son.  (D.E. 5, pp. 4-5; D.E. 13). Plaintiff seeks to hold Sheriff responsible for criminal trespass, obstruction of justice, tampering with evidence, bullying, and harassment.  (D.E. 5, pp. 4-6; D.E. 13, p. 43). Plaintiff alleges that:

- on March 31, 2022, Sheriff Ramirez entered Plaintiff's property through the back gate (D.E. 7, p. 5; D.E. 13, pp. 34, 36);

- Molina's wife, Dolly, previously had called Sheriff Ramirez complaining about Plaintiff and his son pointing a bat at the Molina's truck when it passed by the property (D.E. 5, p. 4; D.E. 7, p. 5; D.E. 13, p. 37);

- According to Plaintiff, he and his son were playing baseball that day (D.E. 5, pp. 4-5; D.E. 7, p. 5);

- Sheriff Ramirez refused to leave Plaintiff's property despite being asked several times by Plaintiff to leave (D.E. 5, p. 5; D.E. 13, p. 38);

- Sheriff Ramirez then informed Plaintiff that he did not hold Plaintiff back from posting bail in connection with his November 14, 2021 arrest because of the Molinas (D.E. 5, p. 5);

- Rather, Sheriff Ramirez held Plaintiff back in the jail because Plaintiff harassed and threatened Sheriff Ramirez's officers.  (*Id.*; D.E. 13, p. 39); and

- Sheriff Ramirez eventually left Plaintiff's property and did not charge Plaintiff with any crime in connection with his visit on March 31, 2022. (D.E. 13, p. 40).

Plaintiff's allegations, accepted as true, reflect that Sheriff Ramirez entered Plaintiff's property after receiving a complaint from Dolly Molinas but that he ultimately

neither detained nor arrested Plaintiff.  Plaintiff fails to state any specific facts showing how Sheriff Ramirez violated his constitutional rights on March 31, 2022 visit with respect to his claims of obstructing justice, tampering with evidence, bullying, and harassment. *See Parker*, 2002 WL 1758181, at *3.

Liberally construed, Plaintiff's allegations against Sheriff Ramirez primarily seek to assert a state law claim of criminal trespass against Sheriff Ramirez under Tex. Penal Code § 30.05.  Under this statute, "[a] person commits an offense if the person enters or remains on or in property of another, including residential land …, without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so."  Tex. Penal Code § 30.05(a).

Federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  This section essentially "grants the courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *Bawley v. Texas*, No. 3:21-CV-2256-N (BH), 2023 WL 2958614, at *8 (N.D. Tex. Mar. 15, 2023), *recommendation adopted* 2023 WL 2957825 (N.D. Tex. Apr. 14, 2023) (internal quotations and citation omitted); *see also United States v. Gibbs*, 383 U.S. 715, 727 (1996).

Here, the Court should retain supplemental jurisdiction over Plaintiff's state law claim of criminal trespass because it arises from the same "common nucleus of operative facts" as his federal claims. *See id.* "Requiring Plaintiff[] to litigate [his] claim[] in state court would necessarily require consideration by two distinct courts of the same operative facts and the same legal issues." *Bawley*, 2023 WL 2958614, at *8 (internal quotations and citation omitted). In addition, because Plaintiff's state law claim lacks merit, "allowing [him] to file suit in state court would impose unnecessary expenses on the court system and the parties involved." *Id.* Texas Penal Code § 30.05 does not set forth "a private cause of action, so any criminal trespass claim based on it should be dismissed." *Id.*; *see also Kiggundu v. Mortgage Elec. Registration Sys., Inc.*, No. 4:11-1068, 2011 WL 2606359, at *6 n.79 (S.D. Tex. June 30, 2011) (Atlas, J.) (dismissing fraud claim brought under the Texas Penal Code because such code does not create a private right of action), *aff'd*, 469 F. App'x 330 (2012).  Accordingly, the undersigned recommends that Plaintiff's constitutional claims and state claw criminal trespass claim, arising in connection with events occurring on March 31, 2022, be dismissed as frivolous and/or for failure to state a claim for relief.

## V.   RECOMMENDATION

For the reasons stated above and for purposes of § 1915(e)(2), the undersigned recommends that the Court:

- **DISMISS without prejudice** Plaintiff's claims against Lt. Perez, Sheriff Ramirez, Clerk Lichtenberger, and County Attorney Gutierrez in their official capacities;

- **RETAIN** Plaintiff's Fourth Amendment false imprisonment claim against Lt. Perez in her individual capacity with regard to the time Plaintiff spent in the Duval County Jail after he was allegedly granted bail on August 17, 2021;

- **RETAIN** Plaintiff's Fourth Amendment false imprisonment claim against Sheriff Ramirez in his individual capacity with regard to the time Plaintiff spent in the Duval County Jail after he was allegedly granted bail on November 15, 2021;

- **RETAIN** supplemental jurisdiction over Plaintiff's state law claim of criminal trespass and **DISMISS with prejudice** this state law claim against Sheriff Ramirez in his individual capacity as frivolous and/or for failure to state a claim for relief pursuant to § 1915(e)(2)(B); and

- **DISMISS with prejudice** Plaintiff's remaining § 1983 claims as frivolous or for failure to state a claim for relief, pursuant to § 1915(e)(2)(B), against: (1) the Duval County Jail; (2) Lt. Perez in her individual capacity; (3) Sheriff Ramirez in his individual capacity; (4) Clerk Lichtenberger in her individual capacity; and (5) County Attorney Gutierrez in his individual capacity.

The undersigned will order service separately on Lt. Perez and Sheriff Ramirez with respect to the Fourth Amendment false imprisonment claims retained in this case.

Respectfully submitted on October 20, 2023.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).